**[J-89-2014][M.O. – Stevens, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 691 CAP |
| | : | |
| Appellee | : | Appeal from the Judgment of Sentence |
| | : | entered on 5/24/12 (amended post- |
| | : | sentence motions denied on 11/27/13) |
| v. | : | in the Court of Common Pleas, Criminal |
| | : | Division of Northampton County at CP- |
| | : | 48-CR-0003415-2011 |
| GEORGE HITCHO, JR., | : | |
| | : | |
| Appellant | : | SUBMITTED:  September 22, 2014 |

**CONCURRING OPINION**

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED:  September 29, 2015**

I concur in the result but have difficulty with a number of the lines of the majority's reasoning.

For example, I would address, on the merits, Appellant's challenge to the trial court's denial of his motion *in limine* seeking to exclude evidence of firearms in his house which were not used in the murder, rather than turning immediately to a harmless-error assessment.  *See* Majority Opinion, *slip op.* at 22-24.  In this regard, I believe that this Court could provide salient guidance relative to the balancing of the probative value of such evidence versus the potential for unfair prejudice.  *See* Pa.R.E. 403.

As to the probative value of the Commonwealth's other-weapons evidence, the trial court accepted the theory that the evidence was relevant to demonstrate that

Appellant purposely selected the most lethal of the multiple deadly weapons at his disposal in confronting Officer Lasso. *See Commonwealth v. Hitcho*, No. 3415-2011, *slip op.* at 49 (C.P. Northampton Nov. 27, 2013). From my point of view, however, the Commonwealth presented a compelling case for first-degree murder without the need to develop these sorts of collateral theories to bolster it. The evidence of specific intent to kill was enhanced by a favorable permissible presumption, since Appellant shot Officer Lasso in the back of the head from a distance of five feet with a shotgun. In light of the strength of the Commonwealth's other proofs, I simply do not see the necessity for the presentation of evidence that other firearms were located in Appellant's house in the first instance.[1]

I believe that the presentation of other-weapons evidence is attended by a fairly high risk of undue prejudice, and, therefore, courts should refrain from sanctioning admission absent a strong and legitimate probative purpose justifying its introduction. To the degree that modest probative connections are accepted as sufficient, the general rule against admissibility is effectively rendered impotent.

Presently, I am more amenable to the Commonwealth's alternate theory of admissibility, which was to demonstrate Appellant's familiarity with weapons, given that he claimed to have failed to recognize a uniformed policeman as an officer of the law and, more particularly, to have mistaken the yellow-striped taser gun in the officer's hand for a handgun. *See, e.g.*, N.T., May 16, 2012, at 125. In any event, in light of the

---

[1] In particular, I am not persuaded that the testimony concerning unloaded weapons positioned remotely from corresponding ammunition bore the sort of relevance that would merit admission over and against the general rule against it. For example, evidence was introduced that an unloaded rifle with a mounted scope was displayed on the wall in Appellant's living room, whereas the ammunition was located in a second-floor bedroom. *See* N.T., May 14, 2012, at 44-60, 87-90 (discussing the other firearms located in Appellant's house).

compelling case for first-degree murder,[2] the fact that other evidence had been properly adduced which reflected irascibility and propensity toward violence on Appellant's part,[3] the inconsistent and unbelievable account of the events which Appellant related to the jury,[4] and the weakness of a defense short of insanity premised on anger management issues and reduced impulse control, I ultimately agree with the majority that the admission of the other-weapons evidence did not make the kind of difference in this case which would undermine confidence in the verdict.

[2] *See, e.g.*, N.T., May 17, 2012 (reflecting the prosecutor's closing remarks to the jurors, as follows: "Ladies and gentlemen, we have a police officer shot in the back of the head here. Let's not lose sight of this, a police officer shot in the back of the head.").

[3] This included relevant evidence of Appellant's possession of a makeshift weapon in an aggressive confrontation with a neighbor immediately before the killing, *see, e.g.*, N.T., May 14, 2012, at 81, 90, 96, 107, 117-19; unopposed testimony that another makeshift weapon (a baseball bat with protruding spikes) was found in Appellant's dining room, *see* N.T., May 15, 2012, at 42; and testimony from a psychiatrist undergirding the defense case that Appellant lacked control over his emotions and temper, albeit he was not legally incompetent to be tried or be held accountable for his actions, *see, e.g.*, N.T., May 17, 2012, at 19, 26-27, 32, 103-104.

[4] For example, while Appellant was acquainted with Officer Lasso, he denied having recognized the officer on the day of the killing, although, in Appellant's own version of the events, the two men spoke from a distance of fifteen feet before Appellant went into his house, *see, e.g.*, N.T., May 16, 2012, at 148-49; whereas he knew that a uniformed police officer was outside the back of his house waiting to speak with him, Appellant testified that he nevertheless believed that an unknown intruder was simultaneously attempting to enter the house through the back door, *see id.* at 167 ("I thought it was somebody else breaking into my house."); and the prosecutor, at trial, graphically exposed Appellant's misleading of the jury, *see, e.g.*, *id.* at 196-205 (reflecting Appellant's denial of having made a particular statement because "I don't use that kind of profanity," followed by the prosecutor's playing of a videotape of Appellant making the statement, which was rife with profanity).